The judge of the Superior Court did not err in affirming the award of the State Board of Workmen's Compensation denying compensation.
 DECIDED NOVEMBER 17, 1949.
Mrs. Essie D. Finch excepts to the judgment of a judge of the Superior Court of Fulton County which affirmed an award by the State Board of Workmen's Compensation denying compensation for the death of her husband who was an employee of the Evins Amusement Company. The evidence before the board is substantially as follows: Essie D. Finch, claimant, testified in her own behalf in substance: that she was married to James L. Finch, the deceased, on November 14, 1906, and lived with him for forty years, being dependent on him; that she last saw him a few minutes before eleven on the morning of June 23 and he was apparently in normal condition; that she and the deceased lived about one-half to one mile from the theater and that he usually rode the bus instead of walking but that she did not know what he had done on this occasion; that he had been treated by a doctor two days prior to his death; that she prepared his dinner for him and that he ate a hearty meal and left for work about 1:20 p. m., which was his usual time to leave; that he had worked at the Plaza Theater for four days; that he worked from 2 to 6 on the afternoon *Page 458 
shift; that the deceased had apparently enjoyed good health for his age of 75, and that he did odd jobs around the house but had not held a paying job for the last two years other than the employment at the theater; that the deceased had previously worked 45 years for Southern Railway as baggagemaster of the Charlotte Division, and that he had always been very prompt about getting to work on time. B. E. King testified substantially as follows; that he was a next-door neighbor of the deceased; that he saw the deceased on June 23 about 1:10 to 1:15 and that he was feeling well at that time and that the witness had a conversation with him; that he saw the deceased leave his house at 1:15, which was his customary time for leaving the house; that he had not known the deceased to have attacks where he collapsed before. Earl W. Hathcock, called by claimant for cross-examination, testified substantially as follows: that he is manager of the Plaza Theater and that the deceased was employed at the theater; that the deceased's definite hours of work were from 2:20 to 6 p. m., and that his duties were to take tickets, tear them in half and hand one half back to the patrons as they came in; that on June 23 the deceased was seen at work sitting in a seat downstairs after it had been reported to him that the deceased was ill; this was approximately 2:05 p. m.; that he had not seen the deceased on this date prior to that time; that the deceased was not expected to open the theater, turn switches on, check curtains, doors, etc., or any other duties along that line; that he hired him and told him to be on the floor at 2:20 to begin taking tickets, but did not tell him a definite time to be at the theater; that he, himself, handled the air conditioning and heating units or his secretary did and these things were not the duties of the deceased. That to his knowledge the deceased did not have a key to the theater and that he had not seen one if it had been turned in since his death; that the deceased had been paid on a wage rate of $15 a week for seven days' operation from 2:20 until 6 in the evening; that the deceased had been in his employ for four days when his death occurred; that Mr. Harrison is now employed by him doing the same duties as the deceased, only his schedule works five days a week and that he does have a key; that the exit doors are located at various points in the theater, *Page 459 
some down near the screen; that the screen is 70 to 80 feet back of the theater foyer and that the aisle leading down front is slanting; that the theater had trouble with small boys opening the exit doors from the inside and allowing others to enter the theater through such doors; that it was the duty of any employee who found these doors open to close them. Dr. J. D. Manget Sr. testified in behalf of claimant in substance as follows: that he had known the deceased since 1906 but that he had treated him only for the last twenty to twenty-five years at intervals for minor troubles; that the deceased was approximately 75 years of age and that he had treated him a few days prior to his death for a kidney trouble and that he had treated him for three or four years for a cardiovascular trouble and that he had been operated on for prostatic trouble and that he had considerable pus in his urine when he came to the office a few days prior to his death and that he had a regular appointment to come back for a more careful check up; that one has cerebral hemorrhage with cardiovascular as well as cardio in the heart that is common among old people; that he signed the death certificate from history of previous treatment of him through the years which in his opinion was caused by cardiac thrombosis; that these attacks sometimes come on in sleep, where a person is absolutely quite, but that he thought that any overexertion where a patient gets short of breath, would be rather dangerous with that condition; that exertion could have precipitated an attack and would have made the hypertension go up; that the deceased received a fractured bone in his leg when he was comparatively young and had to be operated on and had some shortening of the bone as a result of the injury and operation; that this condition would not be affected by ordinary gait but would be if he tried to run; that any walking or any other exertion causes the heart to beat harder which might make the blood pressure go up, but not necessarily so. Landrum Finch testified: that he was the son of the deceased and that he had dinner with the deceased on Sunday prior to his death on June 23 and had accompanied him to the theater and was with the deceased when Mr. Harrison, an employee of the theater, pointed out his duties, which were to turn on the switches, keep doors closed to keep people out who had not bought tickets, let *Page 460 
curtains down at the front of the theater on each side of the screen, down low next to the floor; that it was also pointed out that they must be kept closed to keep light out to keep people from going back there; that after the deceased's death he found the key among his effects, which he returned to the theater through the lady at the ticket booth; that he did not know whether or not the deceased did any of these duties on June 23. Lucinda Alexander testified for the defendant substantially as follows: that she was an employee of the Plaza Theater in June 1948; that she went to work at 8 a. m. and was off at 2 p. m. that her duties were to clean up the theater and that the last job she did every day before getting off was to wash rags in the closet; that she was working there on June 23 when Mr. Finch died; that she heard him groan while she was washing rags in the closet and that she went out and he was sitting in a seat about ten feet away from where she was washing rags and she went out and checked him and he had his hat on and his umbrella in his hand and she called to him but he did not answer; that the other maid had just returned from turning off the lights but the deceased was not there when she went into the closet, which was approximately at 2; that the deceased usually came in the closet and hung up his hat above where she washed rags and that he usually came in every day about the time she was finishing up her work, but that he had not reached the closet to hang up his hat on June 23; that she sent the other maid to get Mr. Hathcock and that she stayed at work on June 23 until the deceased had been carried from the theater. Nina Fuller testified for the defendant substantially as follows: that she is and was an employee of the Plaza Theater in June, 1948 and that she is a maid and her duties are to clean up the theater; that she gets off work at 2 o' clock and that she had gone down to turn the lights out on June 23 and was coming back up the aisle when she saw the deceased and the other maid and that she went and told the secretary in Mr. Hathcock's office that the deceased was sick and they came down; that it was customary for the deceased to come to the theater about 2 p. m. and that he went to work at 2:20 p. m.; that he usually came in the closet and hung up his hat, but that on June 23 when she saw him he had his hat on and was holding an umbrella. *Page 461 
The Board of Workmen's Compensation was authorized to find that the employee had not entered upon his duties at the time of his heart attack and that at that time he was not expending any physical energy in the performance of his duties for his employer. In order for an injury to be compensable in a case where disease or physical disability exists, exertion on the part of the employee in the performance of his duties must combine with the disease and its effects and contribute to the resulting condition of the employee. This requirement was found not to exist in this case and the authorized finding is conclusive on this court. The cases cited by the plaintiff in error are not applicable because in most if not all of them an employee received a traumatic injury while he was at work or preparing himself for work or he was engaged in some kind of physical exertion during the performance of his duties which contributed to the injury. The court did not err in affirming the award denying compensation.
Judgment affirmed. Sutton, C. J., and Worrill, J., concur.